Unlike some of the earlier cases, this one is allotted 20 minutes aside by the clerk, but those are allocations the clerk makes by weighing the briefs, and it doesn't really always evaluate correctly the amount of time they should be. I know there are a lot of issues raised, but some of them are fairly simple, and some we can easily deal with just from reading the briefs. This is your lucky day. I have a prepared statement that takes five minutes. Very good. Very good. But I would request a favor. First of all, I'm Larry Barker. I represent the appellant plaintiff, Mr. Brokaw, and I would request one favor that you have on top there to refer to the ER, the excerpts of record. Not the SER, but just the ER.  We won't look at the SER. Okay. All right. Are you referring to all the orders, or what do you want us to look at? Yes, if you would just have it there. I'm probably going to turn you to about four or five pages to help you get a handle on the case, and then you'd be on your way to knowing exactly what's going on. All right, great. Great overview. Yes, there we are. Okay. In 1995, Mr. Brokaw was working as a senior design engineer at TRW when he was solicited by Mr. Weigel, the manager of mechanical engineering at Qualcomm. Mr. Weigel promised substantial stock to leave the pension job at TRW, and the manager said that should not be a problem. We're all getting it. He attended the employee Christmas party. That is Mr. Brokaw, the plaintiff. He attended the employee Christmas party in December 1995. Now, the court did make a finding in ER 186, please make a note of this, that Mr. Brokaw was solicited with stock options as part of his solicitation offer to work at Qualcomm. That's ER 186. Mr. Brokaw relied on the promise and began work at Qualcomm as a senior design engineer on January 29, 2000. That should be the year 1996. Before that date, he had never been told that he would lose his stock if he were laid off. Qualcomm defends by an attorney connotance here, a declaration that Qualcomm prepared a document on February 2, 1996, claiming that all options would be lost upon termination. Now, February 2, 1996 is after Mr. Brokaw started work. Qualcomm unilaterally prepared a schedule that stated that Mr. Brokaw would not get any stock for over two years after starting work and would not get 40 percent of his stock until over five years and two months later. California Code of Regulations, Section 260.140.41F, states that options must vest at not more than 20 percent per year, and therefore Qualcomm's entire restrictive schedule was illegal. Qualcomm has made a smokescreen by citing stock qualification requirements when issuer requirements should be cited. That is, there are at least two areas of the corporation's code. Those refer to qualifying stock, which has certain requirements, but there are also another area of issuer transactions when you are issuing something. And so Qualcomm has only given you the law dealing with qualifying stock and not with issuing stock, which is what we're talking about. It's very specific in that citation. What Qualcomm should be citing or what the court should be looking at is California Corporation's Code, Section 25.102.0. And that requires compliance with CCR 260.140.41. Qualcomm's vesting schedule of 40 percent of the stock more than five years and two months after starting work is unconscionable. The regulation, that's the CCR, sets a maximum standard and public policy of conscionability. Mr. Brokaw did a great job for four and a half years and was laid off July 7, 2000. His unvested options were worth about $400,000. Those options had to be set aside. That is, the corporation had to identify them and set them aside pursuant to state and federal laws and also pursuant to company policy. Qualcomm was unjustly enriched by keeping the set-aside stock. Unjust enrichment does not require any wrongdoing, such as fraud. Restitution is required when he or she has been unjustly enriched at the expense of another. The term benefit connotes any type of advantage, and that's citing the California Supreme Court case of Gerardo v. Antionoli. Qualcomm profited by Mr. Brokaw's work and then kept the appreciation of the promised benefit by the trick of whimsical layoff to deprive the subservient employee of the benefit. An employer should be prohibited from granting a benefit contingent on continued employment and then terminating the employee to deprive the employee of the promised benefit. California's new jury instructions are the law regarding good faith. If you think of the jury instructions, what you can have is a situation where the let's say the California Supreme Court had case law, but then there was a new jury instruction. Well, the jury instructions are what's read to the jury as applying the law to the facts. And so it seems that the jury instructions would be what the law is and not a previous case law. Jury instructions are the law because they are read to the jury and used by the court regardless of any other statutes of cases. Now, regarding California jury instruction 2423, that's the instruction for breach of implied contract of good faith and fair dealing. And it specifically states that both parties to an employment relationship have a duty not to do anything that prevents the other from receiving the benefits of their agreement. Good faith means honesty of purpose without any intention to mislead or take advantage of another. Mr. Brokaw was asked to train Paul Ripp, a younger worker, to replace him. This is dealing with age discrimination. Mr. Brokaw trained Mr. Ripp, who was performing his job when Mr. Brokaw left. Mr. Brokaw has a prima facie case for age discrimination, which does not involve burden switching, even if Qualcomm gave a reason to lay off Mr. Brokaw. In his unit, that's Mr. Brokaw's unit, there were 440 engineers, of which 46 were laid off. The entire unit had only 17 engineers over the age of 57, and Qualcomm laid off 13 of them. Qualcomm retained 390 of the engineers under 57 years old. Therefore, an engineer in the Global Star unit had a 10 times greater chance of being laid off if over the age of 57. A math expert declared that laying off 13 of the 17 workers over 57 years old was statistically unfair by Qualcomm by 3.1 billion to 1. Qualcomm said the reason Mr. Brokaw was laid off was that he was unqualified and unneeded. However, an email from Mr. Ellis stated that Mr. Brokaw was the only one who could do the job. Mr. Ellis said they were laying off the older workers and higher salaried workers to save money. Qualcomm defends this suit with Mr. Brokaw's deposition. They used Mr. Brokaw's deposition and with Qualcomm's unilateral unconscionable documents that restrict Mr. Brokaw's stock rights. Mr. Brokaw's depositions resulted in conflicting statements, but he was thwarted from corrections in his second deposition by the magistrate. Mr. Brokaw has Parkinson's disease and was under disabling medication during both depositions. If you want to make a note as to where that is in the record, he told, at the beginning of the deposition, he told them both times he had Parkinson's disease, he was under medication and it would affect him. And that's at E.R. 106. You don't have to look now. And also S.E.R. 459 for the second deposition. Now, the way the law works, Mr. Brokaw's case is not to be dismissed just because he is disabled. Disabled pursuant to federal rules of evidence. The case is supposed to be handled by using his self-serving statements pursuant to federal rules of evidence. 803 parentheses three. Not the improper leading questions of his deposition while he was under medication. Now, the lower court did not even acknowledge any of Mr. Brokaw's corrections. And Mr. Connaughton did not even give the court Mr. Brokaw's corrections. He had a red sheet with both of his depositions. And those were not even given to the court except later on for another motion on the second, only on the second deposition. This case should be reviewed by using Mr. Brokaw's complaints and declarations as truthful. A complaint can be amended even during trial and leave shall be freely given when justice so requires. Pursuant to federal rules of civil procedure 15 parentheses A. Federal rules of civil procedure 15 parentheses B. Allows for amendment of a complaint to conform to the evidence. Mr. Brokaw's numerous signed declaration declarations conform to the facts in the complaints and support all of the causes of action. Regarding Qualcomm's restrictive documents, please turn to ER 146A. So if you could do that now, I would really appreciate it. That's the non-qualified stock option agreement. And it begins with it says has this day granted to you. So what we're talking about here is whether this document is unconscionable. Now, the lower court didn't refer to all the lower court said that Mr. Brokaw was an at will employee and therefore didn't have any rights. That's all it said. It didn't refer to, it didn't quote any of this document here, which is the only one that says Mr. Brokaw, according to the defense, I believe that Mr. Brokaw would lose his rights. The front page, well, if you're looking at 146A, like I say at the very front of it, it says has this day granted to you. It's called a non-qualified stock option agreement. But the truth of the matter is the intent of it was not to do that at all. It wasn't to give Mr. Brokaw any any stock necessarily. It was actually it had a schedule there on it where he gets 40 percent over five years. Five years and two months and two days later, actually, you're starting work. But if you look, let's see. If you look at 146B, that's the next page. After more confusing language, paragraph five. And by the way, this is the only time any court or I would address these issues, would talk about them. You're the only people that, you know, the only court that's ever not not listened to this because I because the court has never cited it or never talked about it. Mr. Connaughton's none of his documents cite cite any of these really. They never talked about any of these. OK. So 146B, after more confusing language, paragraph five supposedly terminates options representation. You were going to argue for five minutes. Yes. I argued 11. I'm sorry. Well, that's the fact. OK. I have about 30 more, 20 more sentences. I'll be done. I'm sorry. I apologize for the remaining eight minutes. Well, thank you. OK. The whole document is unconscionable. This there's about four pages here. And on the first page, it referred to federal regulations, regulation T and so forth. It's only when you get to this paragraph five. You can see how confusing it is. It's where it talks about terminating within 30 days that one would lose their undusted stock options. By looking at that, well, Mr. Brokaw is not a college graduate. The whole document is unconscionable since it's confusing to a reasonable person. Was unilaterally prepared by a party of superior bargaining power and does not grant any additional benefits. It looks to be a pre-printed form, which those are some just some of the rules of something being unconscionable. It doesn't give you any additional benefits over what was already promised. What I said said earlier, and I do apologize that reading this only takes five minutes. But if you quickly would look at these, they can be looked at very quickly. And that is in addition to look to what I'm reading. I just said it would take that time to read it. One forty seven is an acknowledgment form. If you this is now Mr. Brokaw. I didn't. If you look at page one forty six. The Mr. Brokaw didn't sign anything. This thing is dated February the second. Nineteen ninety six unilaterally prepared by Qualcomm. And Mr. Brokaw didn't sign that it was just given to Mr. Brokaw. And they referred to one forty seven, which begins with its acknowledgement of receipt is what it is. So that's a further confusion. It does have a place where Mr. Brokaw doesn't remember this, but it has a place for his signature. So it begins with it. And it's only down at the very, very end of the acknowledgement form that it says that it acknowledges that it is somehow supersedes all prior oral and written agreements. Well, Mr. Brokaw never, never remember seeing this and never, never agreed that he will lose his promised stock. And this was all done. See, this is March the 15th. Nineteen ninety six of getting this receipt. And that would be like twenty five days after he was an employee. Those of you that will turn to E.R. 208 is an email for Mr. Ellis. Now, Qualcomm E.R. 208 is an email from Mr. Ellis. And that's what Qualcomm is basically saying is that Mr. Brokaw is unneeded and unwanted. But if you look at E.R. 208, that is Mr. Ellis arguing that Mr. Brokaw is the only one who can do the job. That's, of course, referring to the age discrimination situation. Mr. Brokaw's supervisor is Mr. Ellis, and he stated Mr. Brokaw was the only one to do the job there. So Qualcomm's claims that Mr. Brokaw was unqualified and unneeded are not true. So how did the lower court handle Mr. Brokaw's prima facie case of age discrimination? At E.R. 190, the court stated that Mr. Brokaw was responding to Qualcomm's reply brief, which would be impossible. As you know, that's clearly a mistake, because, you know, the reply brief, you know, the defense counsel makes a reply brief, and then the one before that is Mr. Brokaw's. But he had not read the reply brief by then. The court used burden switching in a disparate treatment cause of action, which was forbidden by Enloe versus Salem and Kaiser. The parties have submitted more than 1,000 pages of excerpts of record, and that alone indicates that there are substantial factual disputes, especially involving the intent of the parties that should be settled by the trier of fact. Therefore, all the causes of action should be restored. And I'd like to save the remainder of my time. Thank you. 14 minutes and less than 15 minutes, I think, is not bad. We're talking you're talking 50 issues here or more. So you're welcome. Are there any questions or comments? Thank you. May it please the Court. I'm Joe Knott, and I represent Appelli Qualcomm. I will be extraordinarily brief. If one accepts Mr. Brokaw's underlying premise, which is obvious but unstated in his briefs, then what we have is, I guess, two judges and a magistrate judge all making, I thought, 26, but I guess 50 separate rulings that all had one thing in common, that they were all wrong. I would submit that that would be a remarkable case in front of this Court. And I would also respectfully submit that this case is in many ways not remarkable. The issues were raised below. They were briefed below. The record before Your Honor is thick and wide and deep. And I believe even a cursory review of the main orders, the first motion to dismiss order, which is at page 44 of the excerpts, the second motion to dismiss order, which is at page 86, the summary judgment order, the first one at excerpts 180, show a court being very thoughtful, listening to all of Mr. Brokaw's arguments, and giving, at a minimum, a long, thoughtful discussion of the law that's now before you for review. And I'd respectfully submit that, based upon the authorities that are before you presently, that an affirmation would be appropriate. Thank you. If you have any questions, Your Honors, I'll be happy to answer them. Thank you, counsel. Thank you. There is nothing to rebut in what counsel said. May I have just a minute? If you one minute. Okay. There was a comment there that there were lots of rulings, and therefore they all agreed. That's not true. The first judge upheld the complaint, at least, as far as fraud and negligent misrepresentation, unlawful unfair business practice, and several other ones. And it was only until the second judge came around that he had the case for 20 days and dismissed all of these other cases and causes of action without, with basically just taking defendants' facts and saying that's what the case was, and not really reciting any of plaintiff's declarations as the truth. So what he just said isn't true, because the first judge had those still going, and they were fine. Now, fraud involves specific allegations that must be put in the complaint, and the first judge said that was fine and cited the Lazar case, which was fine. And so we've already specifically pleaded all these, and now we're blindsided later on by the judge who says, well, those specific allegations aren't proper. That's the end of the minute. Thank you very much. Thank you both, counsel. The case just argued will be submitted. The next case is City of San Diego v. United States District Court.
judges: Reinhardt, Beezer, Wardlaw